ROBERT MANWARING ET AL. V. MARY P. TERRY.

1. A vendee under a quit-claim deed does not take by estoppel an after-acquired title to the land by his grantor.

2. An undivided interest in several tracts of land may be the subject of sale, with rights as distinctly fixed in such interest, upon such sale, as if such interest was defined by metes and bounds, and in a particular part of such lands.

3. Whoever takes by quit-claim deed a title to lands incumbered by outstanding mortgages, cannot claim of his vendor any other interest than his vendor had at the date of the purchase, and which passed to him at the time.

APPEAL from Marion.    Tried below before the Hon. J. D. McAdoo.

The facts appear in the opinion.

*J. C. Hutcheson,* for appellants, cited Herman on Estoppel, 288, 289 ; 3 Wheaton, 453 ; Story's Jurisprudence, Sec. 1015 ; 1 Hilliard on Mortgages, 503, 504, 508 ; 3 Washburne on Real Prop., third edition, 105, 476 ; 2 Bing., N. C., 380, Nease v. Moss ; 2 Lomax's Dig., 103 ; 1 Smith's Lead. Cases, 629, 635, 638, 641 ; 12 Wend., 57, Sales v. Smith ; 11 How., 323, Van Rensalaer v. Kearney ; 2 Barn. & Ald., 281 ; 2 Ad. & Ellis, 287 ; 2 Smith's Lead. Cases, 457 ; 11 Wallace, 217, May v. Le Clerc ; 15 Ga., 321, Bireus v. Vincent.

*R. A. Reeves,* also for appellants, cited 32 Texas, 352, Gould v. West ; 9 Cowen, 18, 21, Jackson v. Winslow ; 4 Wend., 305, Jackson v. Peck ; 1 Cowen, 616, Jackson v. Humble ; 14 Johnson, 193, McCracken v. Wright ; 11 Howard, 322–325, Van Rensalaer v. Kearney ; 21 Howard, 288, Lessee of French and Wife v. Spencer *et al.*

*Moore & Shelley,* for appellee.

Ogden, J.—The facts of this case are somewhat peculiar and complicated, requiring a close mathematical calculation, in order to the proper solution of the respective rights of the parties interested. The facts as established by the proof and admissions of the parties are as follows: In 1860, Gier & Grier being equal. owners of two tracts of land in Marion county, one known as the Mason survey, containing about 2047 acres, the other known as the Gier & Grier survey, containing 75 acres, Gier conveyed his undivided half interest in the two tracts to C. A. Buckley. Six days afterwards Buckley conveyed one-half of his interest to Sutton & Pettingill, and in 1862 Buckley mortgaged to Gohlman an undivided half interest in the Mason survey, when in fact he owned but a one-fourth interest.

On the sixteenth of August, 1862, Sutton reconveyed to Buckley his interest in the land acquired by his and Pettingill's purchase of 1860. This last conveyance gave Buckley, with what he previously owned, the legal title to an undivided three-eighths of the entire tract; but as he had executed a mortgage upon one-half of the tract when he owned but a one-fourth, his after-acquired interest from Sutton became subject to the Gohlman mortgage. The title to the two tracts of land at this period was one-half in E. Grier, three-eighths in Buckley and one-eighth in Pettingill; but Buckley's three-eighths in the Mason survey was incumbered by the Gohlman mortgage. In December, 1862, Buckley, by a quit-claim deed, assigned to John H. Sutton all his right, title and interest in and to three-eighths of the two tracts of land in controversy. By this assignment Sutton received an unincumbered three-eighths of the Gier & Grier survey, and three-eighths of the Mason survey incumbered with the Gohlman mortgage.

The character of the title received by him and the cir-

cumstances attending these several conveyances show most clearly that Sutton, at the time of his last purchase, was fully aware of the mortgage, and that the assignment by Buckley was made with the certain knowledge of all parties that Sutton took the conveyance subject to the mortgage lien.  It is very clear that Buckley, by a transfer of the mortgaged property, could not thereby defeat the lien ; and as he then conveyed his entire interest in the two tracts of land, the mortgage lien followed the legal title into the hands of Buckley's vendee, and was no longer a mortgage upon Buckley's, but Sutton's property; and the mortgage having become attached to that particular interest, held the lien over it, regardless of who might become the owner of the legal title.  And when Sutton and Pettingill conveyed to Mrs. Terry by joint deed, she received a title to one-half of the Gier & Grier survey, unincumbered, and an undivided half interest in the Mason survey with the Gohlman mortgage resting upon three-fourths of her interest.

The fact that Buckley, in 1863, purchased Grier's undivided half interest in the two tracts of land could by no means relieve the interest of Sutton from the mortgage lien.  He knowingly purchased an incumbered title, and he had no right, under any circumstances, to demand a perfect one ; and as his interest in the Mason survey was incumbered by the Gohlman mortgage, he could make no perfect title to Mrs. Terry, except by discharging the mortgage lien.  This he did not do, and as he conveyed to Mrs. Terry an imperfect title, with covenant of warranty, Mrs. Terry cannot demand or expect a better title than she bought of Sutton, but she may rely on his covenants of warranty for damages resulting from any imperfection or failure of title; she is chargeable with notice of her vendor's title, and that was a mere quit-claim, subject to the mortgage.

It is unnecessary to notice the claims of Keen and Manwaring and Hutchison, as to the other half of the two tracts of land, as their interests have been settled by a compromise filed in the court below, and very properly made a part of the decree of the court.

There is now no controversy excepting as to Mrs. Terry's interest in the land, and as three-fourths of her half interest in the Mason survey has been sold to satisfy the Gohlman mortgage, she has remaining only one-fourth of one-half, or one-eighth of the Mason survey, and one-half of the Gier & Grier survey, to which she will be entitled on a proper division of the two tracts.

The judgment of the District Court is reversed, and the cause remanded, that a judgment may be entered in accordance with this opinion, and that an equitable partition may be made under the directions of the court among the respective owners.

Ogden, P. J., *on rehearing.*—This cause comes up before us now on a rehearing, and we have given it much and careful consideration, and we confess it has not been without much difficulty that we have been able to discriminate between the rights of all parties, and to determine, at the date of the institution of this suit, where the title to the land in controversy legally and equitably vested.

Counsel appear to think that because the several conveyances were by fractional portions of the whole tract, and as the title to each particular fractional part attached to and became vested in the whole, that therefore the principles of law could not be applied to the several interests, as though each party owned a particular part by metes and bounds. But so far as the interests of the several parties involved in this case are concerned, we are unable to discover any difference in the law governing

their rights, whether their interests are defined by a particular portion or undivided fractional part of the whole, since a deed or mortgage may attach to and become vested in a particular undivided fractional portion of the whole, and will adhere to that particular fractional part as firmly and distinctly as though the interest was defined, by a divided part, by metes and bounds.

In other words, if there be four equal and undivided interests in a tract of land, designated respectively by the first four letters of the alphabet, a deed or mortgage given for or upon that portion designated by the letter A, can never, without the express consent of all parties interested, be shifted so as to attach to the portions known as C or D, and a mortgage given upon C can by no operation of law be made to affect A or D, or any other portion of the whole. With this fact as a rule or guide for the solution of the problem before us, many of the apparent difficulties in this case are easily solved.

C. A. Buckley mortgaged to Gohlman one-half of the Mason survey, when, in fact, he owned only a fourth. The Gohlman mortgage attached, at once, to that particular one-fourth, then owned by Buckley, and by force of the principles of both law and equity, would attach to any after-acquired portion, until it covered the one-half called for. Had Buckley afterwards acquired but an additional one-fourth interest, there would have been no difficulty in determining what particular half was subject to the mortgage, regardless of the fact that the legal title to that half may have passed to any number of purchasers. At the execution of the mortgage, Buckley owned but one-fourth interest in the land, to which the mortgage at once attached; and when he afterwards purchased an additional one-eighth, that too became subject to the mortgage. There was, then, three-eighths of the Mason survey incumbered by the Gohlman mortgage, and this three-

eighths Buckley conveyed by quit-claim to Sutton. There can be no doubt that Sutton's three-eighths was, at this time, subject to the mortgage. Sutton purchased with a full knowledge of this fact, and paid only for the interest conveyed to him, which was simply the right of redemption. And we think it cannot be legally or justly contended, that when Buckley purchased the Grier half, he thereby released the three-eighths in the hands of Sutton from the force of the mortgage, and invested in Sutton a perfect title, which he had not contracted to do, and which Sutton had not purchased or paid for. Had Buckley retained the Sutton three-eighths until after his purchase of the Grier half, then it might have been contended, with reason, that the mortgage of Gohlman would have attached to any portion of the seven-eighths. But Sutton purchased and paid for only an incumbered three-eighths, and neither he nor his vendee has a right to complain that they did not get an unincumbered interest.

It is immaterial, so far as a proper determination of this cause is concerned, whether Mrs. Terry purchased a quit-claim or warranty title; she only received the title of her vendor, and she has no right, in law or equity, to claim more. The Gohlman mortgage having, by reason of the transfers of interest, become attached to the Sutton three-eighths, held the same for its satisfaction; and when Buckley purchased the Grier half, it also attached to one-fourth of that, so as to cover one-half interest in the whole tract; and upon the foreclosure of that mortgage, the purchaser at the sheriff's sale received a perfect title to the Sutton three-eighths, and to one-fourth of the Grier half, leaving three-eighths of the whole tract subject to the Pettingill deed of trust. It would, therefore, be extremely inequitable to take from the purchaser, under the Pettingill deed of trust, an unincumbered title to three-eighths of the land, and give it to Mrs. Terry, in

order to make good her title which was purchased from Sutton with a full knowledge of its imperfections.

After a thorough investigation of the whole case, we are forced to the conclusion that in our former opinion we arrived not only at the law, but the equities which should control the interests of all parties concerned, and we therefore affirm our former judgment in this case.

AFFIRMED.